Littleton, Judge,
delivered the opinion of the court:
Plaintiff instituted this suit to recover $1,075,981.97, made up of an alleged loss of profits of $934,360.24 on 1,013,817 undelivered blankets alleged to have been included in its bid and in the forms 13, and $141,621.73, damages alleged to have been sustained by reason of the liabilities of plaintiff to its vendees arising out of errors in the Government’s descriptions of the blankets.
The basis of this suit is the alleged breach of warranty by the defendant of the quality of the blankets offered for sale which were included in plaintiff’s offers of purchase accepted by the execution of the various forms 13.
Plaintiff contends (1) that the failure of the Government to deliver the kind and quality of blankets contracted for and its attempt to deliver, in lieu thereof, blankets of inferior quality and in a damaged condition was a breach of the contract, entitled it to actual damages occasioned thereby; and (2) that failure and refusal of the Government to deliver any blankets after March 19, 1920, except on conditions forming no part of the contract, amounted to a willful abrogation of the contract, entitling plaintiff to damages, as it was thereby deprived of earnings from resale by it of the undelivered blankets.
We are of opinion that plaintiff’s claims cannot be sustained. The facts establish that the surplus merchandise in question was sold “ as is ” and that there was no warranty by the Government or anyone authorized to act for it that the blankets would be of the quality for which the plaintiff now contends, i.e., unsoiled and without rips or tears. The act of Congress authorizing the sale of surplus property, including the blankets here in question, provided for the sale of such property “ upon such terms as may be deemed best by the Secretary of War.”
Plaintiff’s petition alleges, that “ On September 9, 1920, the Government of the United States offered for sale by public advertisement * * * all surplus Army blankets.” The facts establish that prior thereto the Secretary of War *467 only authorized the sale of said blankets “ as is ” at certain fixed prices. This was not an auction sale. There is nothing in the several forms 13 issued inconsistent with the condition on which the surplus merchandise was offered and authorized to be sold, and there can be no question but that the surplus-property officers at Chicago, New York, and Atlanta, executing on behalf of the Government the forms 13 at their respective areas, could only do so within the provisions of authority granted to them to sell said blankets. Their authority is found in the public advertisements offering said blankets for sale and authorizing said surplus-property officers to sell them on the terms therein set out.
The case of the Yankee Export & Trading Co. v. United States, 72 C.Cls. 268, was similar to the one under consideration. In that case the plaintiff contended that it had purchased a certain specified and ascertained lot of surplus Army blankets and that the defendant, instead of delivering to it the specific lot of blankets purchased, delivered blankets from other and different lots of inferior quality. The court there held that plaintiff was not entitled to recover on the ground of inferior quality in view of the fact that the surplus property was offered for sale “ as is.” That decision is applicable here. See, also, Wm. E. Iselin et al. v. United States, 60 C.Cls. 255, affirmed 271 U.S. 136; Maguire & Co., Inc., v. United States, 59 C.Cls. 575, affirmed 273 U.S. 67; Triad Corp. v. United States, 63 C.Cls. 151; S. Snyder Corp. v. United States, 68 C.Cls. 667.
It should be noted that plaintiff agreed to furnish an inspector to inspect the blankets in the Chicago zone prior to taking delivery and agreed to certify to the number, quality, quantity, and price of the blankets as ordered delivered from the Chicago zone before defendant would receive payment therefor.
In the Atlanta zone plaintiff specifically agreed to accept the blankets at points of original delivery, accepting the Government specifications without recourse; and also, in the final form 13 executed November 20, 1920, agreed to accept the blankets as of condition at point of original delivery.
*468 In the New York zone plaintiff accepted blankets as marked and classified by the Government and in the receipt given therefor it stated that “ No claim will be entered after they are accepted and receipted for by the General Textile Corporation.” The New York quartermaster offered and provided plaintiff with every facility for making a complete and thorough inspection of the blankets before delivery.
This all goes to show that the surplus blankets in question were being sold at the various depots “ as is ”, as authorized by the Secretary of War through the office of the Quartermaster General.
The petition is dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; GkeeN, Judge; and Booth, Chief Justice, concur.